# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 24, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**NATHAN FRYE,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0993** (BOR Appeal Nos. 2051280 & 2051284)
                     (Claim No. 2015002142)

**ALLIANCE COAL, LLC,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Nathan Frye, by Jonathan C. Bowman, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Alliance Coal, LLC, by Lucinda Fluharty, its attorney, filed a timely response.

There are two issues on appeal. First, whether intervertebral disc disorder with myelopathy, cervical region should be added as a compensable component of the claim. Second, whether cervical epidural steroid injections should be approved for treatment of the compensable conditions. This appeal arises from the December 30, 2014, and July 30, 2015, claims administrator's decisions denying authorization for cervical epidural steroid injection with fluoroscopy and a follow-up with WVU, and denying the request to add intervertebral disc disorder with myelopathy, cervical region as a compensable component of the claim, respectively. In two separate Orders dated April 11, 2016, and April 22, 2016, the Office of Judges affirmed the claims administrator's decisions. The Board of Review affirmed the Orders of the Office of Judges on September 28, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Nathan Frye, a roof bolter, was injured in the course of his employment on July 10, 2014, when debris fell from the roof of the mine and struck him in the back and right shoulder. Mr. Frye sought treatment and was assessed with neck pain, shoulder pain, and sprain/strain of the shoulder. X-rays of the cervical spine revealed C5-6 degenerative disc space narrowing. The claim was initially held compensable for injury of the face and neck and sprain of unspecified site of the shoulder and upper arm. However, sprain/strain of the neck was later added as a compensable component of the claim. Mr. Frye continued to have pain and sought treatment from several physicians over the course of the next few months.

Mr. Frye has a documented history of degenerative disc changes in his cervical spine. Beginning in January of 2004, Mr. Frye sought treatment from Andrew Worst, D.C., for complaints of constant dull pain and stiffness in the neck that started in November of 2003. X-rays revealed that the cervical spine curve was severely decreased. Disc spaces at C5-6 were decreased and sinuous rotation was noted to the right at T1. Facet sclerosis and Lushka joint sclerosis were present at the lower cervical spine. There was mild degenerative disc disease and degenerative joint disease present in the cervical spine.

After the July 10, 2014, work-related injury, Mr. Frye began seeing Scott Carlos, M.D. Dr. Carlos's initial assessments were neck and shoulder pain. These assessments remained much the same over the course of treatment. Dr. Carlos ordered an MRI of the cervical spine and the impressions were disc bulging from C3-4 through C7-T1, most severe at the C5-6 level, and neural encroachment as detailed. Foraminal stenosis was also noted at C4-T1 both left and right. Eventually, Dr. Carlos referred Mr. Frye to a neurosurgeon who decided injections were the best course of action.

On November 18, 2014, Mr. Frye underwent an independent medical evaluation performed by Sushil Sethi, M.D. Dr. Sethi opined that the injury resulted in a sprain of the right shoulder. He noted that the prior MRI revealed multilevel aging process degenerative disease which has no relationship to the work-related injury. Dr. Sethi found Mr. Frye had reached maximum medical improvement and that no further changes can reasonably be expected in spite of ongoing treatments, therapies, or interventions. On December 30, 2014, the claims administrator denied Mr. Frye's request for cervical epidural steroid injection with fluoroscopy and a follow-up with WVU based on Dr. Sethi's report. Dr. Sethi reiterated his findings in an addendum report authored on February 19, 2015. Dr. Sethi stated that the cervical sprain/strain is a soft tissue injury which is self-limiting and had resolved. He reiterated that Mr. Frye had reached maximum medical improvement for the cervical sprain/strain and that no further intervention was appropriate. Any complaints of cervical spine pain after the independent medical evaluation were from pre-existing non-compensable degenerative disc disease.

Mr. Frye testified in a deposition on March 27, 2015, that he was injured in the course of his employment when debris fell from the roof of the mine and hit him in the head and right shoulder. His treatment included anti-inflammatory medication, injections, physical therapy, and MRI of the cervical spine, and MRI of the shoulder, and a neurosurgical consultation. In spite of the conservative treatment, his symptoms persisted. Mr. Frye stated that he saw a chiropractor

prior to his injury and had his whole spine adjusted. Chiropractic visits were twice a month until before the compensable injury.

Mr. Frye's symptoms persisted and he sought treatment from Michael Steinmetz, M.D. Dr. Steinmetz examined Mr. Frye and found him to have C5-6 and C6-7 right sided stenosis. Dr. Steinmetz recommended that Mr. Frye undergo C5-6 and C6-7 foraminotomies. On May 14, 2015, Mr. Frye underwent hemilaminotomy and foraminotomy at C5-6 on the right side. Dr. Steinmetz stated that the nerve root was verified to be decompressed with an angled nerve hook. The same procedure was performed at C6-7.

On July 2, 2015, Mr. Frye underwent an independent medical evaluation performed by Bruce Guberman, M.D. Dr. Guberman's impressions were chronic post-traumatic strain of the cervical spine; right C5-C6 and C6-C7 disc bulging with radiculopathy; status post C5-C6 and C6-C7 hemilaminotomy and foraminotomy; and chronic post-traumatic strain of the right shoulder. Dr. Guberman opined that Mr. Frye had reached maximum medical improvement and that no further treatment was likely to improve his impairment in regards to the injury. However, Dr. Guberman did believe that the cervical epidural steroid injection was necessary, reasonable, and appropriate treatment for the injury.

On July 21, 2015, a diagnosis update was submitted requesting that intervertebral disc disorder with myelopathy be added as a compensable component of the claim. Regarding clinical findings, it was stated that there was no prior evidence of intervertebral disc disorder with myelopathy during physical examinations or in medical history, and the MRI dated July 30, 2014, supported etiology related to work injury. On July 30, 2015, the claims administrator denied the request to add the condition to the claim.

On January 11, 2016, Mr. Frye was evaluated by Victoria Langa, M.D. Dr. Langa diagnosed status post right C5-C6 and C6-C7 foraminotimies; post-operative mild partial right spinal accessory neuropathy; status post right shoulder arthroscopy with subacromial decompression, posterior/superior labral repair and paralabral cyst decompression; mildly symptomatic degenerative acromioclavicular joint. She opined that the July 10, 2014, injury resulted in a flare-up, exacerbation, or aggravation of Mr. Frye's underlying cervical degenerative disc disease, which ultimately resulted in the surgical decompression. In Dr. Langa's opinion, the cervical epidural steroid injection was appropriate treatment. Dr. Langa did not agree with the diagnosis of intervertebral disc disorder with myelopathy because there was no evidence that Mr. Frye exhibited cervical myelopathy. Dr. Langa disagreed with Dr. Sethi's findings that Mr. Frye had reached maximum medical improvement at the time of his examination. She stated that at the time, Mr. Frye had not yet undergone an MRI and was still symptomatic. Dr. Langa opined that Mr. Frye had not yet reached maximum medical improvement with regard to either his neck or his shoulder and therefore declined to provide an impairment rating.

On April 11, 2016, the Office of Judges affirmed the December 30, 2014, claims administrator's decision denying the request for authorization for cervical epidural steroid injection with fluoroscopy and a follow-up with WVU. The Office of Judges noted that several

physicians have attributed Mr. Frye's symptoms to degenerative conditions. The claim has been held compensable for the condition of cervical sprain/strain. However, the evidence does not show that Mr. Frye's symptoms are related to the compensable injury. The medical evidence of record shows that the symptoms are related to degenerative changes such as the multiple bulging discs. The Office of Judges also noted that Dr. Sethi opined that the evidence shows multilevel degenerative disc disease that is clearly due to aging process wear and tear which was neither caused by nor aggravated by the injury. Ultimately, the Office of Judges found that the opinion of Dr. Langa was most persuasive and that, at most, the work-related related incident resulted in the aggravation of the underlying cervical degenerative disease. West Virginia Code of State Rules §85-20-21 allows for treatment only if the pre-existing condition aggravates the compensable condition. The Office of Judges determined the underlying cervical degenerative disc disease does not aggravate the compensable condition of sprain of the neck. Therefore, the Office of Judges found that the claims administrator properly denied the request for authorization for cervical epidural steroid injection with fluoroscopy and a follow-up with WVU.

On April 22, 2016, the Office of Judges affirmed the July 30, 2015, claims administrator's decision denying the request to add intervertebral disc disorder with myelopathy, cervical region, to the claim. The Office of Judges noted that while the diagnosis update requesting to add the condition to the claim stated that there was no prior evidence of the condition with physical examinations or medical history and that the July 31, 2014, MRI supported etiology related to the work injury, Dr. Langa had already considered this diagnosis and concluded that intervertebral disc disorder with myelopathy was technically incorrect as there is no evidence that Mr. Frye ever exhibited any cervical myelopathy. In her opinion, the work incident resulted in aggravation of the underlying degenerative disease which ultimately resulted in surgical decompression. The Office of Judges found that Dr. Langa's findings were persuasive and that the preponderance of the evidence showed the claims administrator did not err in denying the condition.

On September 28, 2016, the Board of Review adopted the findings of fact and conclusions of law and affirmed, with modifications, the April 11, 2016, and April 22, 2016, Orders of the Office of Judges. Regarding Mr. Frye's request to add intervertebral disc disorder with myelopathy to the claim, the Board of Review concluded that based upon *Gill v. City of Charleston*, 236, W.Va. 737, 783 S.E.2d 857 (2016), the denial of Mr. Frye's request to add the additional compensable condition must be affirmed.

After reviewing the record, we affirm the decision of the Board of Review. There is a well-documented history of degenerative disc disease and degenerative joint disease dating back to at least 2004. Mr. Frye requested that intervertebral disc disorder with myelopathy, cervical region be added as a compensable component of the claim. However, no evaluating physician has agreed with this diagnosis. Dr. Sethi, both during his initial examination and in his subsequent addendum report, opined that the correct diagnosis was cervical sprain/strain which had resolved. Dr. Sethi opined that Mr. Frye had reached maximum medical improvement and that any residual symptoms were due to the degenerative disc disease. Dr. Guberman also evaluated Mr. Frye and diagnosed chronic post-traumatic strain of the cervical spine; right C5-C6 and C6-C7 disc bulging with radiculopathy; status post C5-C6 and C6-C7 hemilaminotomy

4

and foraminotomy; and chronic post-traumatic strain of the right shoulder. Dr. Guberman did not mention the requested diagnosis. Finally, Dr. Langa stated that she did not agree with the diagnosis of intervertebral disc disorder with myelopathy, cervical region as there was no medical evidence showing Mr. Frye exhibited cervical myelopathy. The record lacks sufficient medical evidence to support the conclusion that Mr. Frye suffers from this condition.

The Board of Review relied on *Gill v. City of Charleston* in affirming the denial of adding intervertebral disc disorder with myelopathy, cervical region to the claim. In *Gill*, this Court previously ruled that "a noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable." 236 W.Va. at 866, 783 S.E.2d at 746. Dr. Langa opined that the compensable injury resulted in the exacerbation or aggravation of Mr. Frye's degenerative disc disease, yet she did not seem to believe that a discreet new injury resulted. The diagnosis requested to be added as a compensable condition is neither a direct result of the work-related injury, nor a discreet new injury arising from the aggravation of a non-compensable condition. Thus, the diagnosis of intervertebral disc disorder with myelopathy, cervical region cannot be added to the claim.

Regarding the requested cervical epidural steroid injections, the only compensable conditions regarding the cervical spine are injury of face and neck and sprain/strain of the neck. Both Dr. Sethi and Dr. Guberman have opined that Mr. Frye has reached maximum medical improvement regarding the compensable condition of sprain/strain of the neck. Further, Dr. Sethi opined that no further intervention is appropriate. Thus, no further medical treatment is reasonably necessary to treat the compensable injury. Any requested injections would be aimed at treating non-compensable and pre-existing conditions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 24, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

Justice Elizabeth D. Walker